**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

**SHERRI WATTS,**                          *
                                       *
    **Plaintiff,**                *
                                       *       **Civil No. TMD 12-2010**
    **v.**                       *
                                       *
                                       *
**CAROLYN W. COLVIN,**                      *
**Acting Commissioner of Social Security,** *
                                       *
    **Defendant.**[1]             *
                            ************

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Sherri Watts ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 9) and Defendant's Motion for Summary Judgment (ECF No. 12).[2]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  She is, therefore, substituted as Defendant in this matter.  *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."  *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

Judgment (ECF No. 12) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 9) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I

## Background

Plaintiff was born in 1975, has a GED, and previously worked as an office assistant, housekeeper, stock clerk, and customer service representative.  R. at 19, 30-31.  Plaintiff applied for DIB on September 3, 2009, and for SSI on February 12, 2010, alleging disability beginning on January 1, 2009 (later amended to January 1, 2011), due to depression, arthritis, obesity, anxiety disorder, and post-traumatic stress disorder ("PTSD").  R. at 13, 17, 112-19, 163.  The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 41-44, 54-68.  On January 26, 2012, ALJ Eugene Bond held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 13, 26-40.  On February 29, 2012, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of disability of January 1, 2011, through the date of the decision.  R. at 10-25.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on May 10, 2012.  R. at 1-9.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On July 6, 2012, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was

reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

### Summary of Evidence

**A.      Opinion Evidence**

On September 24, 2010, S. Boyer, Ph.D.,[3] a state agency consultant, evaluated on a psychiatric review technique form ("PRTF") Plaintiff's mental impairments under paragraph B of Listings 12.04, 12.06, 12.08, and 12.09 relating to affective, anxiety-related, personality, and substance addiction disorders.  R. at 340-53.   Dr. Boyer opined that Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration.  R. at 350.  Dr. Boyer did not find evidence to establish the presence of the criteria under paragraph C of these Listings.  R. at 351.   Accordingly, Dr. Boyer assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 336-39) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; and to (6) respond appropriately to

---

[3] The Court previously noted that Dr. Boyer possesses a Ph.D. degree.  *See Cooper v. Colvin*, Civil No. TMD 13-2623, 2014 WL 4702280, at *2 (D. Md. Sept. 19, 2014).

changes in the work setting.  Plaintiff otherwise was not significantly limited.  R. at 336-37.  Dr.

Boyer's RFC assessment thus provided:

> **Understanding and memory:** Intact, able to understand and follow instructions.
>
> **Sustained concentration and persistence:**
> [Plaintiff's] ability to sustain attention and concentration and persist to task completion is moderately affected by her substance abuse and combined psychiatric disorder.  She has low frustration tolerance and has difficulty with sustained attention.  [Plaintiff] is likely to function best with routine tasks that can be completed at her own pace.
>
> **Social interaction:**
> [Plaintiff] has difficulty getting along with others.  She is likely to function best with tasks that do not require group cooperation or frequent interactions with others.
>
> **Adaptation:**
> [Plaintiff] has a [history] of poor judgment and may function best with tasks that require little or no independent decision making.
>
> Fluctuations in [Plaintiff's] functioning may be related to substance abuse. Continued abstinence is likely a key component in achieving a positive [treatment] response for residual psych impairments, in maintaining adequate functioning in daily activities, and in being able to maintain the responsibilities of [substantial gainful activity] in a reliable manner.

R. at 338.

On November 3, 2010, S.K. Najar, M.D., another state agency consultant, assessed

Plaintiff's physical RFC.  R. at 360-67.  Dr. Najar opined that Plaintiff could (1) lift and/or carry

50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six

hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and

(4) perform unlimited pushing and/or pulling.  R. at 361.  Plaintiff occasionally could balance,

kneel, and crawl and frequently could stoop, crouch, and climb ramps and stairs (but never

ladders, ropes, or scaffolds).  R. at 362.  She had no manipulative, visual, communicative, or

environmental limitations, however.  R. at 363-64.

On May 23, 2011, Brian Kim, D.O., conducted a consultative musculoskeletal examination of Plaintiff.  R. at 374-78.  Dr. Kim noted that Plaintiff's "[g]ait is stable using a straight point cane and a left knee brace.  There were no signs of instability."  R. at 376. "Cervical spine range of motion was minimally reduced. . . . Shoulder ranges of motion were moderately reduced on the left side."  R. at 376.  "Upper extremity examination range of motion was minimally reduced at the left elbow and wrist. . . . Lumbar spine range of motion was mildly reduced in full flexion."  R. at 376.  "Muscle manual testing revealed 4/5 at bilateral knees due to pain.  Grip strengths were symmetrical.  Left shoulder range of motion was not fully tested but mild weakness was identified."  R. at 376.

> Today's evaluation did reveal significant limitations at various anatomical regions.  Left shoulder range of motion was moderately reduced to about 50 to 60 percent of the right side.  There was some mild weakness in the knee extensor muscles due to pain.  Otherwise, there [were] no significant joint restrictions. . . . Regarding her function, sitting should be well tolerated without significant limitations.  Standing and walking however should be limited to 15 minutes on a continual basis.  Handling and carrying objects would be limited with the left arm.  Hearing and speaking are unaffected.  Spine ranges of motion were all within functional limits.  No significant restrictions are identified.  Motor examination revealed 4/5 on muscle manual testing of the knee extensor due to pain.  Left shoulder examination was not fully tested due to pain and moderately restricted range of motion.  Her gait was stable using a single point cane.  Her weight bearing appeared to favor the right side.  She is in need of [a] single point cane at this time.  Patient's mobility such as getting on and off the examination table is stable but slow.  Walking on heels and toes is normal.  Squatting and arising from squatting position is very slow.  She does have some difficulty with knee bending.  Deep knee bending or deep squat was not tested and only partial squat was tested.

R. at 376.

On June 2, 2011, another state agency consultant, E. Edmunds, Ph.D., evaluated on a PRTF Plaintiff's mental impairments under paragraph B of Listings 12.04, 12.06, 12.08, and 12.09.  R. at 383-96.  Dr. Edmunds opined that Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in

maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 393. Because Dr. Edmunds also did not find evidence to establish the presence of the criteria under paragraph C of these Listings (R. at 394), Dr. Edmunds assessed Plaintiff's mental RFC (R. at 379-82) and opined that she was moderately limited in her ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; and to (6) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 379-80.

Dr. Edmunds's mental RFC assessment thus stated:

A. Understanding and memory appear grossly intact. [Plaintiff] would be able to learn and recall both simple and more complex instructions, though she may have difficulty at times carrying out more complex routines consistently due to the conditions.

B. [Concentration, persistence, or pace]: Conditions combined with distractions from physical conditions and pain will impose intermittent fluctuation of sustained concentration and persistence, but [Plaintiff] would be able to complete a normal workday with reasonable breaks. [Plaintiff] would be able to complete a normal workweek without significant exacerbation of psych symptoms.

C. Social: [Plaintiff] denies problems accepting supervision, but several sources have noted irritability and social interactions which would affect her ability to respond appropriately to the public.

D. Adaptability: [Plaintiff] denies problems handling changes, and she is able to negotiate independently in the community, and care for her household.

From a mental standpoint, [Plaintiff] would be able to perform tasks on a sustained basis.

R. at 381.

On June 8, 2011, J. Biddison, M.D., a state agency consultant, assessed Plaintiff's physical RFC (R. at 397-404) and opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 398.  Plaintiff occasionally could climb, stoop, kneel, crouch, and crawl and frequently could balance.  R. at 399.  She had no manipulative, visual, communicative, or environmental limitations.  R. at 400-01.  In so finding, Dr. Biddison specifically acknowledged Dr. Kim's May 2011 findings.  R. at 404.

On June 30, 2011, Gul Chablani, M.D., opined that Plaintiff could never climb, bend, or squat.  R. at 409.  In an eight-hour workday with normal breaks, she could stand for one hour, walk for one hour, and crawl for one hour; sit for two hours; and reach for four hours.  R. at 409.  Plaintiff could lift at most 10 pounds frequently.  R. at 409.  She could be exposed occasionally to extreme cold and heat and frequently to humidity, chemicals, dust, fumes/odors, noise, and heights.  R. at 409.  Plaintiff could use her hands for repetitive action such as simple grasping, pushing, and fine manipulation.  R. at 409.  Dr. Chablani noted an absence of substance abuse.  R. at 410.  The doctor noted that Plaintiff suffered from PTSD and depression, causing her moderate restriction in activities of daily living; moderate difficulties in maintaining social functioning; difficulties often in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration.  R. at 410.  Dr. Chablani ultimately opined that Plaintiff's medical condition prevented her from working from June 30, 2011, to June 30, 2012.  R. at 411.

**B.**     **Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's allegations:

> [Plaintiff] alleges depression, arthritis, obesity, anxiety disorder, and post-traumatic stress disorder.  She states that these impairments result in short-term memory problems, stiffness in her legs, need for pain medication that causes drowsiness and arthritis medication that causes nausea, fatigue, forgetfulness, difficulty dealing with other people, crying spells, anger outbursts, isolation, and inability to hold her arms up to arrange her hair.

R. at 17.  Plaintiff also stated that "she cares for her teenage children, walks a dog, prepares simple meals, does light housework, and shops for groceries with her children."  R. at 18 (citing R. at 154-62).

**C.**     **VE Testimony**

According to the VE, a hypothetical individual with Plaintiff's same age, education, and work experience who had the capacity to perform unskilled, light work[4] and required a sit/stand option at will and limited contact with the general public could work as a packer and packaging worker, machine tender, or inspector.  R. at 37-38.  That individual could work as a small-parts inserter, grading and sorting worker, or quality control worker if his or her RFC were limited instead to only sedentary work.[5]  R. at 37.  That individual could not perform substantial gainful activity, however, if he or she would miss two or more days of work per month.  R. at 39.

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below.  *See infra* Part VI.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).

### III

### Summary of ALJ's Decision

On February 29, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of January 1, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a small-parts inserter, grading and sorting worker, quality control worker, packer and packaging worker, machine tender, or inspector.  R. at 15-21.  The ALJ accordingly found that she was not disabled from January 1, 2011, through the date of the decision.  R. at 21.

In so finding, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must have the option to alternate between sitting and standing at will and is limited to unskilled work that does not involve contact with the general public."  R. at 17.  The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 18.  The ALJ afforded "significant weight" to the state agency consultants' opinions and "little weight" to Dr. Chablani's opinion.  R. at 19.

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling 96-8p.[7] Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 9-1 (citing, *inter alia*, *Fleming v.*

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

*Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work.  *Id.* at 5.

Plaintiff's assertion is without merit.  In this case, the ALJ discussed in narrative form the records and opinions of Plaintiff's examining sources.  R. at 18-19.  The ALJ also considered Plaintiff's allegations and credibility when determining her RFC.  R. at 17-18.  Thus, the ALJ's function-by-function assessment and narrative discussion were proper.  *See Brown v. Astrue*, Civil Action No. TMD 09-1358, 2011 WL 3047635, at *2 (D. Md. July 22, 2011); *Walter v. Astrue*, Civil No. JKS 08-639, 2009 WL 2584817, at *4 (D. Md. Aug. 19, 2009) (concluding that ALJ's "function by function" assessment was adequate because ALJ evaluated medical facts and opinions, as well as claimant's testimony and credibility, in narrative discussion).  "Moreover, in making her boilerplate argument regarding the alleged lack of a 'function-by-function' assessment, [Plaintiff] does not cite any particular 'functions' that she alleges were inadequately addressed by the ALJ."  *Livingston v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-10-2996, 2013 WL 674075, at *1 (D. Md. Feb. 22, 2013).  Accordingly, remand is not warranted.

Plaintiff maintains, however, that the ALJ failed to evaluate properly pertinent evidence, including a January 2011 MRI examination of her left knee (R. at 405-06).  Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 9-1.  She further contends that the ALJ failed to include any of the limitations opined by Dr. Kim in his May 2011 RFC assessment, including her limited ability to handle and carry objects with her left arm, her need to use a cane, and her ability to stand and walk for no more than 15 minutes at a time (R. at 376).  *Id.*

> While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is

> based, there is no rigid requirement that the ALJ specifically refer to every piece
> of evidence in his decision[.]

*Reid v. Comm'r of Soc. Sec.*, __ F.3d __, No. 13-1480, 2014 WL 4555249, at *3 (4th Cir. Sept.

16, 2014) (citation omitted) (internal quotation marks omitted).  Moreover, the burden is on the

party attacking an agency's determination to show that prejudice resulted from the error.

*Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*,

640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the

circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v.*

*Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged

error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'"

(quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct.

1236, 1245 (1964))).  Furthermore, "a deficiency in opinion-writing is not a sufficient reason for

setting aside an administrative finding where the deficiency had no practical effect on the

outcome of the case."  *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*,

869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common

sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe

that the remand might lead to a different result.").  Rather, "[i]f it is predictable with great

confidence that the agency will reinstate its decision on remand because the decision is

overwhelmingly supported by the record though the agency's original opinion failed to marshal

that support, then remanding is a waste of time."  *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir.

2010) (Posner, J.); *see Bishop v. Comm'r of Soc. Sec.*, No. 14-1042, 2014 WL 4347190, at *2

(4th Cir. Sept. 3, 2014) (per curiam).

Here, Plaintiff's contention regarding the ALJ's consideration of her January 2011 MRI

of her left knee is without merit, as the ALJ specifically reviewed this report in his decision.  R.

at 18 (citing R. at 405-07).   Further, providing in an RFC assessment an option to sit or stand adequately accounts for a claimant's significant standing and walking limitations.   *See Koch v. Astrue*, No. CV. 08-609 PK, 2009 WL 1743680, at \*3 (D. Or. June 15, 2009).   As for Plaintiff's use of a cane, "[e]ven assuming that Plaintiff does require a cane, there is no indication that use of a cane would prevent Plaintiff from performing the minimal standing, walking and carrying requirements of sedentary work," which the ALJ found that Plaintiff could perform (R. at 20, 37).   *Boyd v. Astrue*, C/A No. 4:10-237-CMC-TER, 2011 WL 3652299, at \*2 (D.S.C. Aug. 17, 2011) (citing *Grebenick v. Chater*, 121 F.3d 1193 (8th Cir. 1997)); *see Catterton v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-1056, 2013 WL 2470082, at \*2 (D. Md. June 6, 2013) ("Given the RFC for sedentary work, any error in omitting the need for a hand-held assistive device is harmless, because by definition, little standing or walking is required to perform sedentary jobs.").

Furthermore, although the ALJ erred in failing to address Dr. Kim's opinion that Plaintiff's ability to handle and carry objects with her left arm was limited (R. at 376), the error was harmless.   Dr. Biddison, a state agency consultant, considered Dr. Kim's May 2011 report, and the ALJ gave "significant weight" to Dr. Biddison's opinion regarding Plaintiff's physical RFC that included no manipulative limitations (R. 19, 397-404).   *See Bryant v. Astrue*, No. 1:11-CV-03083-SKG, 2013 WL 1303127, at \*12 (D. Md. Mar. 28, 2013) (finding harmless error in ALJ's failure to discuss consultative examiner's report because report was discussed by state agency consultants, whose opinions were given "great weight" by ALJ, and was consistent with medical evidence on record), *aff'd per curiam sub nom. Bryant v. Colvin*, 571 F. App'x 186 (4th Cir. 2014).   In any event, "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant,

the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). An ALJ is not obliged to investigate a claim not presented at the time of the benefits application and not offered at the hearing as a basis for disability, however. *Meyer v. Colvin*, 754 F.3d 251, 256-57 (4th Cir. 2014) (citing *Halverson v. Astrue*, 600 F.3d 922, 934 (8th Cir. 2010)). Plaintiff in this case did not claim that limitations with her left arm affected her ability to work (R. at 155, 171), and she did not testify that she had any impairment or limitations in her left shoulder (R. at 30-35). In short, Plaintiff's contention regarding the ALJ's discussion of these conditions is unavailing.

Further, the ALJ found that Plaintiff had moderate difficulties with regard to social functioning and concentration, persistence, or pace (R. at 16) and so limited her to "unskilled work that does not involve contact with the general public" (R. at 17). Plaintiff asserts that, despite giving "significant weight" to the state agency consultants' opinions, the ALJ failed to include in his RFC assessment Dr. Boyer's opinion that Plaintiff "is likely to function best with routine tasks that can be completed at her own pace" (R. at 19, 338). Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 9-1. The ALJ's limiting Plaintiff's RFC to unskilled work not involving contact with the general public, however, is consistent with Dr. Boyer's opinion regarding Plaintiff's optimal functioning with completing routine tasks at her own pace. *See Johns v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-2996, 2014 WL 333552, at *2 (D. Md. Jan. 28, 2014) ("The ALJ limited [the claimant] to unskilled work with limited general public contact, which is consistent with [the state agency physician's] suggestion that [the claimant] 'may exhibit difficulties on occasion with more complex tasks and persistence' and 'is likely to perform adequately in environments with limited social interactions, ability to work at their own pace and minimal stressors.'" (citation omitted)); *Bowers v. Comm'r, Soc. Sec. Admin.*, Civil No.

SAG-11-1445, 2013 WL 150023, at *2 (D. Md. Jan. 11, 2013) ("The [ALJ's] finding of a moderate impairment in concentration, persistence, and pace does not indicate that restrictions other than a limitation to simple, unskilled work would be necessary.").

Plaintiff further maintains that the ALJ failed to perform a more detailed assessment of her capacity to perform the mental demands of work while assessing her RFC.  Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 9-1.  She, however, "provides no analysis of how a 'more detailed' assessment . . . might have resulted in a different outcome."  *Seifert v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-1051, 2013 WL 1881065, at *2 (D. Md. May 2, 2013); *see Reid*, 2014 WL 4555249, at *4 ("[The claimant] has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim.").

Furthermore, although Plaintiff contends that the ALJ "cumulated [her] mental impairments into a less[]detailed conclusion that [she] was limited to unskilled work that does not involve contact with the general public," Pl.'s Mem. Supp. Mot. Summ J. 9, ECF No. 9-1, "the ultimate conclusion itself need not contain detail, as long as the supporting analysis is sufficient to justify the conclusion reached."  *Livingston*, 2013 WL 674075, at *2.  In this case, the ALJ found that, while Plaintiff claimed that she suffered from short-term memory problems, fatigue, and isolation (R. at 17), her noncompliance with medication suggested symptoms that were not as severe as alleged (R. at 18, 19).  "[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."  *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring); *see Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992) (per curiam) (claimant's failure, *inter alia*, to sustain consistent treatment regimen supported ALJ's credibility determination that claimant's pain complaints were

inconsistent with evidence).   The ALJ further found that Plaintiff's activities of daily living indicated an ability to perform work-related functions (R. at 18).   *See Johnson*, 434 F.3d at 658; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam); *see also Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007) (per curiam) (affirming ALJ's adverse credibility determination where claimant's description of her activities was inconsistent with her testimony regarding pain).   Thus, the ALJ found that her statements about the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment.   R. at 18.   Plaintiff does not dispute the ALJ's credibility determination, but, in any event, the Court finds that the ALJ's supporting analysis is sufficient to justify his conclusion, as he reviewed the evidence of record in determining the degree of Plaintiff's mental limitations.   R. at 16-17, 19.   Her argument accordingly is without merit.

Plaintiff finally argues that the ALJ erroneously relied upon the VE's testimony because the hypothetical questions to the VE failed to include all of Plaintiff's limitations, citing *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989).   Pl.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 9-1. However, Plaintiff's "argument that the ALJ relied upon an improper hypothetical to the VE is also rejected.   This argument is based on the same assertions discussed above with regard to alleged errors pertaining to [Plaintiff's] RFC.   Accordingly, the argument fails for the same reasons which need not be reiterated here."   *Wilson-Brown v. Colvin*, Civil Action No. TMD 12-01112, 2013 WL 5272939, at *3 n.4 (D. Md. Sept. 16, 2013).

Plaintiff also maintains that the ALJ's preclusion of contact with the general public as stated in his RFC assessment (R. at 17) was not included in the hypothetical questions to the VE, which related only to an individual's "limited general public contact" (R. at 37).   Pl.'s Mem.

Supp. Mot. Summ. J. 10-11, ECF No. 9-1.  Plaintiff again fails to demonstrate prejudice from the claimed error, however.  "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Walker*, 889 F.2d at 50 (citation omitted).  As the Commissioner points out, the jobs delineated by the VE do not require contact with the general public, which Plaintiff has not argued to the contrary (Def.'s Mem. Supp. Mot. Summ. J. 18-19, ECF No. 12-1 (citing *Dictionary of Occupational Titles*)).  *See Hartline v. Astrue*, 605 F. Supp. 2d 194, 208 (D.D.C. 2009) ("Plaintiff's first argument [that the hypothetical question to the VE did not expressly incorporate Plaintiff's need for limited general public contact] fails because—as Defendant explains and Plaintiff does not dispute—the jobs listed by the VE (router, office helper, and non-postal mail clerk) do *not* require significant public contact." (citing *Dictionary of Occupational Titles*)).  The Court accordingly finds that substantial evidence supports the ALJ's determination at step five of the sequential evaluation process.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case.  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**VII**

**<u>Conclusion</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 12) is

**GRANTED**.   Plaintiff's Motion for Summary Judgment (ECF No. 9) is **DENIED**.   The

Commissioner's decision is **AFFIRMED**.  A separate order shall issue.


Date: October 14, 2014                          _____/s/_____
                                                         Thomas M. DiGirolamo
                                                         United States Magistrate Judge